**AMERICAN PETROLEUM INSTITUTE et al., Plaintiffs-Appellants,**

v.

**Robert W. KNECHT et al., Defendants-Appellees.**

No. 78–3500.

United States Court of Appeals, Ninth Circuit.

Dec. 19, 1979.

**2.** *See* 28 C.F.R. § 14.9(a).

**1308**

Roger Beers, San Francisco, Cal., Donna R. Black, Los Angeles, Cal., on brief for plaintiffs-appellants; Howard J. Privett, Los Angeles, Cal., argued.

Donatas Januta (argued), San Francisco, Cal., Bruce C. Rashkow, Harold R. Schmidt, Lawrence A. DeMase, Pittsburgh, Pa., J. Roy Spradley, Jr., Washington, D. C., on brief for defendants-appellees; Eldon V. C. Greenberg argued.

Before BROWNING and GOODWIN, Circuit Judges and JAMESON,* District Judge.

PER CURIAM:

Plaintiffs-appellants, American Petroleum Institute, Western Oil and Gas Association, and certain oil company members of the Institute and Association, brought this action against three federal officials to enjoin "final approval" of the California Coastal Zone Management Program pursuant to the Coastal Zone Management Act of 1972, as amended (CZMA), 16 U.S.C. § 1451 *et seq.* The district court in a detailed and well considered opinion denied injunctive relief and granted summary judgment affirming the federal defendants-appellees' approval of the California Program. *American Petroleum Institute v. Knecht*, 456 F.Supp. 889 (C.D.Cal.1978).[1] We affirm.[2]

### Background

The Coastal Zone Management Act was enacted by Congress to preserve, protect, and develop the resources of the Nation's coastal zones. CZMA § 303.[3] The Act seeks to achieve wise use of land and water resources in coastal areas by providing monetary assistance to states that develop and exercise management programs consistent with its standards. CZMA § 302.[4] The Act charges the Secretary of Commerce with approving state programs. In performing this duty, he must be satisfied that the state program complies with requirements set forth in CZMA § 305 and § 306.[5] After the Secretary has approved a state plan the state receives federal grants that pay up to 80 per cent of the cost of administering

---

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

1. The statement of undisputed facts in the district court's opinion (456 F.Supp. at 894–95) describes the plaintiffs and defendants, and also the defendants-in-intervention, including the California Coastal Commission.

2. In large part we are adopting Judge Kelleher's opinion and shall make specific reference in this opinion to his discussion and rulings on the various issues presented.

3. 16 U.S.C. § 1452.

4. 16 U.S.C. § 1451.

5. 16 U.S.C. § 1454 and § 1455.

their program. CZMA § 306(a).[6] Approval triggers a "federal consistency" provision in the CZMA which requires federal agencies, permittees, and licensees to show that their proposed developments in the coastal zones, including oil and gas developments on the Outer Continental Shelf, will comply with state management program requirements. Federal agencies may not approve proposed projects that are inconsistent with a coastal state's management program, except upon a finding by the Secretary that the project is consistent with the purposes of the Act or necessary in the interest of national security. CZMA § 307.[7]

California was one of the first states to apply for and receive federal assistance under the CZMA. In November, 1972, voters approved the California Conservation Act which established the California Coastal Commission and six regional commissions to prepare a comprehensive plan for the long-range development and conservation of the state's coastal zone resources. In 1975 the Commission submitted its plan to the legislature and governor for approval. In 1976 the California legislature enacted the California Coastal Act which was similar to the Commission's proposed plan. The National Oceanic and Atmospheric Administration (NOAA), the approving agency under the Secretary of Commerce, then began working with state officials to assure that this legislation complied with the requirements of the CZMA.

In September, 1977, the plaintiffs brought this action to enjoin NOAA's approval of the California Program. In October, 1977, the district court issued an order allowing the federal defendants to approve the California Program, but enjoining en-

forcement of consistency provisions until the case could be resolved on its merits. The Acting Associate Administrator for Coastal Management, on behalf of the Secretary of Commerce, then approved the California Coastal Management Program under the CZMA. In August, 1978, the district court granted summary judgment in favor of the federal defendants, holding that (1) approval of the California Program complied with the requirements of the CZMA, (2) the Final Environmental Impact Statement complied with the requirements of the National Environmental Policy Act, and (3) the State could enforce the federal consistency provisions of CZMA § 307.

### Contentions on Appeal

As they did in the district court, appellants challenge the Acting Administrator's findings that the California Program complied with the requirements of the CZMA. Their specifications of error with respect to the district court's affirmance of the agency's approval may be summarized as follows: (1) the court erred in applying the "arbitrary and capricious" standard of review and deferring to the agency's "expertise" in interpreting and applying the Act; and (2) the California Program failed to comply with numerous CZMA requirements, in that, *inter alia*, (a) the program was not properly adopted by the State after adequate notice and hearing; (b) it is not sufficiently specific to inform users of the rules to which they are subject; (c) it does not include adequate provisions with respect to local coastal programs; (d) it does not contain the energy elements required; (e) it does not adequately consider the national interests; and (f) it does not protect against unreasonable restrictions on uses of regional benefit.

---

6. 16 U.S.C. § 1455(a).

7. 16 U.S.C. § 1456. Federal agencies undertaking projects in the state's coastal zone "shall insure that the project is, to the maximum extent practicable, consistent with approved state management programs. . . ." § 1456(c)(2). Prospective Federal licensees and permittees "shall provide in the application to the licensing or permitting agency a certification that the proposed activity complies with the state's approved program and that such

activity will be conducted in a manner consistent with the program . . . No license or permit shall be granted . . . until the state . . . has concurred with the applicant's certification . . . ." § 1456(c)(3)(A). The Secretary, however, "on his own initiative or upon appeal by the applicant [may find] . . . that the activity is consistent with the objectives of [the CZMA] or is otherwise necessary in the interest of national security." § 1456(c)(3)(A).

Appellees contend that the issues are not ripe for judicial review.

### Ripeness

Following a careful analysis of the law of "ripeness", the district court held that (1) the approval given by the federal defendants pursuant to § 306 resulted in action which was ripe for review; but (2) no issues relating to the consistency provisions of § 307 were "presently ripe for disposition".

Recognizing that the issue of ripeness presents a close question, the district court concluded, after balancing all relevant factors, that the approval under § 306 was ripe for review, noting that this approval was the "culmination of the agency review process here involved" and that "there is nothing further to be done as a part of the administrative process, other than the obligation of 'continuing review' under § 312(a) . . . ." 456 F.Supp. at 898. The court found that all parties to the action might suffer substantial hardship if judicial review were denied and concluded that the interests of all parties would be served by the resolution at the earliest practicable date of the challenges to the program's approval. *Id.* at 902.

In holding that no issues regarding § 307 were ripe for review, the court concluded that, "Whether the state will utilize its consistency powers improperly to retard or halt energy development [is] wholly speculative," noting that no specific activities contemplated by plaintiffs and no anticipated refusals to certify have been presented.

We agree with the district court's findings and conclusions on the issue of ripeness, which are set forth in 456 F.Supp. at 897–903.

### Standard of Review

■ After reviewing numerous cases construing the "arbitrary and capricious" standard of review, the district court recognized that deference is due an agency's interpretation of its own regulations and the statute it is charged with administering, and that the agency's decision should not be disturbed unless error is so clear as to deprive its decision of a rational basis. The court referred to the factors to be considered, as set forth in Mr. Justice Frankfurter's dissent in *I.C.C. v. J–T Transport,* 368 U.S. 81, 127, 82 S.Ct. 204, 7 L.Ed.2d 147 (1961), i. e., "the precision of the statutory language, the technical complexity of the relevant issues, the need for certainty as against experimentation, and the likelihood that Congress foresaw the precise question at issue and desired to express a foreclosing judgment on it." The court concluded that all four factors "here favor according considerable deference to the federal defendants' implicit interpretation of the NOAA program approval regulations". 456 F.Supp. at 907–908.[8]

We agree with the district court and adopt its opinion with respect to "Standard of Review", 456 F.Supp. at 903–908, and "Scope of Review", *Id.* 908–912.

### Adoption by the State

■ CZMA § 306(c)(1) requires that the Secretary in approving the state program find that the state "has developed and adopted a management program for its coastal zone in accordance with rules and regulations promulgated by the Secretary . . . ." Regulations adopted pursuant to this requirement provide that the "management program [be] . . . formally adopted in accordance with State law, or in its absence, administrative regulations . . . ." 15 C.F.R. § 923.31.

In finding that the adoption of the California Coastal Zone Management Program (CZMP) met the requirements of the CZMA, the Acting Administrator considered five elements: (1) the California Coastal Act of 1976; (2) the Coastal Conservancy Act of 1976; (3) the Urban and Coastal Parks Bond Act of 1976; (4) Coastal Commission Regulations promulgated pur-

---

**8.** See also the summary of the principles of scope of review under the "arbitrary and capricious" standard set forth in *Bowman Transpor- tation v. Ark-Best Freight System,* 419 U.S. 281, 287, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974).

suant to the Coastal Act of 1976; and (5) the "Program Description" (contained in Part II of the combined State of California Management Program and Final Environmental Impact Statement (FEIS)).

The first four elements present no problem. Appellants contend, however, that the "Program Description" was never "formally adopted in accordance with State law" and that the Acting Administrator in approving the program accordingly failed to comply with the Agency's own regulation.

The district court found that only Chapter 11 of the 14 chapters of the Program Description had been approved by the California Coastal Commission.[9] The court concluded, therefore, that the Acting Administrator's findings that the program satisfied the requirements of CZMA could only be based on the first four elements and Chapter 11 of the "Program Description". The court held, however, that excluding Chapters 1 through 10 and 12 through 14 of the Program Description did not invalidate the program approval, since the excluded chapters were primarily descriptive of features of the program and were not essential to the Agency's conclusions. They were merely used as "a device, an organizational tool, to enable interested parties and the Acting Administrator to see more easily how the specific requirements of § 306 have been dealt with and satisfied". 456 F.Supp. at 915–916.

Appellants point to several specific findings in support of their conclusion that the Acting Administrator relied on the excluded chapters rather than using them merely as an "organizational tool". We have reviewed these findings in detail. In each case the administrator referred to chapters in the Program Description that were not part of the California Program, but he then explained how various provisions in the California Program satisfied the requirements of the CZMA and the applicable regulations. We agree with the district court that the administrator merely used the excluded sections as an "organizational tool" in reaching his conclusions, that this was permissible, and therefore, the findings should not be overturned.[10]

We adopt the district court's findings and conclusions with respect to "Adoption by the State". 456 F.Supp. at 912–918.

### *Specificity*

■ CZMA § 307 requires that, after the state's management program is approved, prospective Federal licensees and permittees shall provide a "certification that the proposed activity complies with the state's approved program and that such activity will be conducted in a manner consistent with the program". No license or permit may be granted until the state has concurred with the applicant's certification, unless the Secretary, on his own initiative or upon appeal by the applicant, finds "that

---

9. Appellants also contend that Chapter 11 was improperly adopted by the California Coastal Commission. The district court recognized that the Commission may not have complied with California law in failing to properly announce in advance that Chapter 11 would be presented to the public at a public hearing. After analyzing the state law, the court, however, "found no authority for plaintiffs' assault on the validity of the Commission's adoption of Chapter 11 as a 'declaration of policy'," and concluded that it was "duly adopted and thus properly considered by the Acting Administrator . . . ." 456 F.Supp. at 914–915.

10. Appellants contest in particular the administrator's finding that the California Program complies with CZMA § 305(b)(8). This section requires that the state program include "[a] planning process for energy facilities likely to be located in, or which may significantly affect,

the coastal zone, including, but not limited to, a process for anticipating and managing the impacts from such facilities." Appellants contend that in making this finding, the administrator had to consider Chapter 9 of the "Program Description" as part of the California Program and that the finding must be overturned since Chapter 9 is one of the chapters which the court ruled could not be considered as part of the California Program eligible for approval. We have examined this finding and note that after discussing Chapter 9, the administrator explained how portions of the California Program, which were eligible for consideration under the CZMA, satisfied the requirements of § 305(b)(8). Disregarding references to Chapter 9, we conclude that the remaining findings satisfy the arbitrary and capricious standard of review.

the activity is consistent with the objectives of [the CZMA] or is otherwise necessary in the interest of national security." CZMA § 307(c)(3)(A).

Appellants contend that the CZMA imposes a duty on the federal appellees to make findings that the state's program contains provisions sufficiently specific to inform persons who wish to conduct activities in the coastal zone of the "rules and conditions to which they are subject". Appellants argue that the California Program lacks the requisite specificity and the Administrator's findings in this respect are therefore insufficient.

The district court noted that the CZMA requires only that the state develop a "management program" and that this term is defined broadly by CZMA § 304(11) as "a comprehensive statement . . . setting forth objectives, policies, and standards to guide the public and private uses of lands and waters in the coastal zone". Reviewing pertinent legislative history, the court concluded that this language does not "require that such programs establish such detailed criteria that private users be able to rely on them as predictive devices for determining the fate of projects without interaction between the relevant state agencies and the user." 456 F.Supp. at 919. Recognizing that "Congress has granted the Secretary and Acting Administrator considerable discretion", the court concluded further that

> [T]he Acting Administrator's findings and Attachment J of the FEIS, when viewed in the context of the legislative history of the Act and of the statutory language itself, satisfy the Court that approval of the California Program has not been arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

456 F.Supp. at 921.

We agree with the district court that Congress intended only that standards be sufficiently specific "to guide public and private uses" and that the Secretary was to be given considerable discretion in deter-

mining whether the state program contained the requisite specificity.[11]

*Coordination with Local Programs*

■ CZMA § 306(c)(2)(A) requires the Secretary to find that the state "has coordinated its program with local, areawide, and interstate plans applicable to areas within the coastal zone existing on January 1 of the year in which the state's management program is submitted [for approval] . . ." In response to this requirement, the Acting Administrator stated that "by virtue of the requirements of the Coastal Act that all local coastal jurisdictions must develop or amend local programs and zoning ordinances in conformance with the policies of the Coastal Act, coordination between the state's programs and local plans is assured." Clerk's Record, Vol. 2 at 441. Appellants contend that this finding does not address the requirement of the statute because the statute requires coordination as of January 1 of the year of approval, while the California Program only provides for a process that assures local programs will be developed sometime in the future. Appellants argue that this exposes users in the interim to a "morass of government jurisdictions, with no resolution of the conflicts among the many local and regional zoning and land use plans".

While the Acting Administrator's finding is not a model of clarity, we conclude that it does afford a "rational basis" for his conclusion that the California Program complies with the requirements of CZMA § 306(c)(2)(A) and accordingly was sufficient under the "arbitrary and capricious" test. See *Bowman Transportation, Inc. v. Arkansas Best Freight System, Inc., supra,* 419 U.S. at 290, 95 S.Ct. 438. The California Program implements a permit process which coordinates its provisions with local plans. At the time the California Program was approved by the Acting Administrator, coordination was achieved by the implementation of Local Coastal Programs. These programs constitute a process which assures that local programs are adopted by the ear-

---

11.  The district court's detailed discussion of the "Legislative History of the CZMA" and "The

Definition of 'Management Program'" appears in 456 F.Supp. at 918–921.

ly 1980's which are consistent with the policies of the California Coastal Act and the CZMA. See California Coastal Act, Chapter 6, Article 2 (Cal.Public Res.Code §§ 30510 et seq.). Until Local Coastal Programs are developed, the Coastal Commission or a local government entity will issue permits, but in either case, a permit must be issued if it is consistent with California Coastal Act requirements.[12] After the development of a Local Coastal Program, a local government entity becomes the issuing agency.[13] Although local government entities retain the power to enforce regulations in addition to the requirements specifically set forth in the California Coastal Act, these additional requirements must "not [be] in conflict with this act". Pub.Res. Code § 30005(a).

Thus, at all times, California has a process which coordinates the coastal program with local plans and assures potential users that they will not be subject to local plans that fail to comply with the requirements of the California Coastal Act. Considering the deference to be given the Acting Administrator's interpretation of the requirements of CZMA § 306(c)(2)(A), we conclude that his findings concerning this statutory provision were not arbitrary or capricious.

### Consideration of National Interest

■ Prior to 1976, CZMA § 306(c)(8) required the Secretary in approving a state program to find that:

The [state] management program provides for adequate consideration of the national interest involved in the siting of facilities necessary to meet requirements which are other than local in nature.

After the Arab oil embargo, Congress in 1976 expanded the section to require that the Secretary find that:

12. Section 30600(b) of the California Coastal Act allows local governments to elect to assume coastal permit jurisdiction prior to completion of their Local Coastal Plan. If the local government does not exercise this option or a development is not subject to this option, "a coastal development permit shall be obtained from a regional commission, the commission on appeal, or the commission where there is no regional commission." § 30600(c). In any case, the issuing agency must issue a permit if

The management program provides for adequate consideration of the national interest involved in planning for, and in the siting of, facilities (including energy facilities in, or which significantly affect, such state's coastal zone) which are necessary to meet requirements which are other than local in nature. In the case of such energy facilities, the Secretary shall find that the state has given such consideration to any applicable interstate energy plan or program.

In contending that the California Program failed to satisfy the mandate of § 306(c)(8), appellants first argue that in reviewing the agency's determination, the district court misinterpreted Congressional intent in passing the statute. They maintain that Congress sought through the CZMA to induce the states to adopt coastal management programs which would include "explicit commitments" to take into account the national interest in the planning and siting of energy facilities.

The Secretary's interpretation of CZMA § 306(c)(8) is set forth in program approval regulations published on January 9, 1975, and reads in part:

. . . The requirement should not be construed as compelling the States to propose a program which accommodates certain types of facilities, but to assure that such national concerns are included at an early stage in the State's planning activities and that such facilities not be arbitrarily excluded or unreasonably restricted in the management program without good and sufficient reasons. . . . No separate national interest "test" need be applied and submitted other than evidence that the listed national interest facilities have been considered in a manner

"the proposed development is in conformity with the provisions of Chapter 3 [of the Act] . . . and the permitted development will not prejudice the ability of the local government to prepare a local coastal program that is in conformity with the provisions of Chapter 3 . . .." § 30604(a).

13. California Coastal Act, Pub.Res.Code § 30604(b).

similar to all other uses, and that appropriate consultation with the Federal agencies listed has been conducted.

16 C.F.R. § 923.15(b).

Following a thorough analysis of the legislative history of both the 1972 Act and the 1976 Amendments, the district court concluded that the 1976 Amendment,

> while expressly recognizing the national interest in the planning for and siting of energy facilities, nevertheless did not alter the requirement of "adequate consideration" in § 306(c)(8) or make any changes in the degree of specificity required under the Act. Rather, recognizing that coastal states like California were currently burdened by the onshore impacts of Federal offshore (OCS) activities and likely to be burdened further by the plans for increased leases on the OCS, Congress sought to encourage or induce the affected states to step up their plans vis-à-vis such facilities.[14]

456 F.Supp. at 923.

The district court noted also the NOAA had reiterated the position it had taken since the inception of the CZMA that "the purpose of 'adequate consideration' is to achieve the act's 'spirit of equitable balance between State and national interests'." This involves a consideration of "the act's broader finding of a 'national interest in

the . . . beneficial use, protection, and development of the coastal zone' (Section 302(a))", including the requirement of subsection 302(g) of the Act that "high priority" be given to the protection of natural systems. The district court concluded accordingly that "while the primary focus of subsection 306(c)(8) is on the planning for and siting of facilities, adequate consideration of the national interest in these facilities must be based on a balancing of these interests relative to the wise use, protection and other development of the coastal zone." 456 F.Supp. at 925.[15] The court concluded further that NOAA had properly considered the Congressional mandate in its program approval regulations both before and after the 1976 amendment.[16]

Appellants also contend that "there is a total want" of any consideration of the national interest in the California Program, contrary to the Acting Administrator's findings. They argue that the California Coastal Act fails to "take into account the social or economic needs of people of inland states who . . . are dependent upon use of the California coast to supply . . . energy needs."

In finding that the California Program complied with CZMA § 306(c)(8) requirements, the Acting Administrator first reiterated the substance of 16 C.F.R. § 923.-

---

14. The district court noted that:

The primary means chosen to accomplish this result was the Coastal Energy Impact Program ("CEIP") contained in new § 308. As the Conferees explained, the purpose of the 1976 Amendments was

to coordinate and further the objectives of national energy policy by directing the Secretary of Commerce to administer and coordinate, as part of the [CZMA], a coastal energy impact program.

. . . The conference substitute follows both the Senate bill and the House amendment in amending the 1972 Act to encourage new or expanded oil and natural gas production in an orderly manner from the Nation's outer Continental Shelf (OCS) by providing for financial assistance to meet state and local needs resulting from specified new or expanded energy activity in or affecting the coastal zone.

H.Rep.No.94–1298, 94th Cong., 2d Sess. 23 (1976), U.S.Code Cong. & Admin.News 1976,

pp. 1820, 1821 (Legislative History at 1073). 456 F.Supp. at 923.

15. The district court rejected appellants' position to the extent that they "seek not guidance with respect to the way in which coastal resources will be managed but instead a 'zoning map' which would implicitly avoid the need to consult with the state regarding planned activities in or affecting its coastal zone." 456 F.Supp. at 926.

16. Revised program approval regulations were promulgated after the 1976 Amendment (43 Fed.Reg. 8378, March 1, 1978). The court considered the revised regulations because "they reflect NOAA's interpretation of any changes wrought by the 1976 Amendments, the former regulations against which the California Program was tested having been promulgated after the Arab oil embargo but before the 1976 Amendments." 456 F.Supp. at 924.

15(b) quoted above and then set forth the manner in which Chapter 11 of the "Program Description" and the California Coastal Act met CZMA requirements regarding the national interests. We agree with the district court that "the Acting Administrator's finding that the Program satisfies § 306(c)(8) is supportable and hence not arbitrary or capricious" and that "[i]t proceeds from a correct interpretation of the CZMA." 456 F.Supp. at 926.

Finally, the district court noted "that both the California Program and the CZMA contain safeguards to protect plaintiffs from arbitrary exercise by the Coastal Commission of its § 307 consistency powers". After discussing the various safeguards, the court concluded that "both as regards specific determination of inconsistency and as regards general trends in and manner of issuance of such determinations, plaintiffs are amply protected by and have various forms of recourse under the California Program itself and §§ 307 and 312 of the CZMA." 456 F.Supp. at 926–927.

We agree with the findings and conclusions of the district court with respect to "Adequate Consideration of the National Interest", as set forth in 456 F.Supp. at 922–927.

*Unreasonable Restrictions of Uses of Regional Benefit*

■ CZMA § 306(e)(2) requires the Secretary in approving a state's plan to find that the state program provides "for a method of assuring that local land and water use regulation within the coastal zone do not unreasonably restrict or exclude land and water uses of regional benefit". In finding that the California Program satisfied this requirement, the Acting Administrator stated:

The principal methods by which California will assure that local regulations do not unreasonably restrict or exclude land and water uses of regional benefit is (1) through the application to permit decisions of policies which include consideration of regional and national interests and (2) through the development of Local Coastal Programs and port master plans which must conform to these policies and

must accommodate uses of more than local importance.

Clerk's Record, Vol. II, at 451.

The Administrator explained his finding by referring to specific sections of the California Coastal Act which deal with the requirements of § 306(e)(2). His finding that the California Program satisfies these requirements was supportable and not arbitrary or capricious.

*Conclusion*

■ From our review of the record we are satisfied that the district court reached the right conclusions in a complex case presenting a number of difficult and close questions. Although we have considered all of appellants' contentions, in this opinion we have addressed only those which appear to be their major concern. We agree with the district court that the Acting Administrator's findings pursuant to the CZMA were reasonable and not arbitrary or capricious. We affirm the judgment and adopt those portions of the opinion of the district court specified in this opinion.

Affirmed.